IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| Plaintiff, | ) | |
| | ) | 1:20 CR 247 |
| v. | ) | CASE NO. _____ |
| | ) | Title 18, United States Code, |
| PAUL EADEH, | ) | Sections 1341, 1346, and 2 |
| | ) | |
| Defendant. | ) | JUDGE NUGENT |

## GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

1. The City of Cleveland (hereinafter, "the City") was a political subdivision within the State of Ohio.

2. The Cuyahoga County Land Reutilization Corporation (hereinafter, "CCLRC"), also known as the Cuyahoga County Land Bank, was a non-profit, government-purposed organization registered in the State of Ohio. CCLRC invited qualified demolition contractors from its list to bid on batches of properties to demolish.

3. A contractor performing demolition work in the City, both as part of a CCLRC project and a private project, was required to obtain permits from the City before the CCLRC or private entity would deem the job completed and issue payment.

4. Defendant PAUL EADEH owned and operated Broadway Wrecking, Inc. (hereinafter, "Broadway Wrecking"), a business that provided demolition and construction services, among other things, in the Cleveland, Ohio, area.

5. Defendant and his business performed demolition work for the City, CCLRC, and private parties.

6. Rufus Taylor ("Taylor") (charged separately) was employed by the City as the Chief of the Demolition Bureau and was an agent of the City. Among other responsibilities, Taylor was responsible for assigning inspections, conducting inspections, and for supervising others conducting inspections. A contractor performing demolition work in the City was required to pass two inspections, conducted by the Demolition Bureau, as part of any demolition job, including private jobs: (1) a clean-hole and sewer bulk (or "bulkhead") inspection and (2) a final compliance inspection. If a contractor passed the final compliance inspection, Taylor or one of his subordinates signed the permit for the job. This final, signed permit was required before a contractor could receive payment for the job.

## COUNTS 1-3
(Honest Services Mail Fraud, 18 U.S.C. §§1341, 1346, and 2)

The United States Attorney charges:

7. The allegations contained in paragraphs 1 through 6 of this Information are incorporated by reference as if stated fully herein.

### The Scheme to Defraud

8. From in or around September 2016, and continuing through in or around September 2017, in the Northern District of Ohio, Eastern Division, Defendant PAUL EADEH devised and intended to devise a scheme and artifice to defraud and to deprive the City and the citizens of the City of their intangible right to the honest services of Rufus Taylor (charged separately), a City official, through bribery.

### Purposes of the Scheme

9. The purposes of the scheme included, but were not limited to the following:

      a.      For Defendant to receive favorable action from the City, in the form of faster service and favorable treatment, Defendant paid Taylor bribes so that Defendant could in turn obtain faster payment for demolition jobs.

      b.      For Defendant to unlawfully benefit and enrich himself and Defendant's business through bribery of Taylor and the resulting favorable official action.

### Manner and Means of the Scheme

10.      The manner and means by which Defendant carried out the scheme included, but were not limited to, the following:

      a.      Defendant gave, offered, and promised things of value to Taylor, including multiple cash payments, to obtain faster service from Taylor and the City.

      b.      Defendant made such payments to Taylor with the intent to influence, and in exchange for, official acts, including Taylor's own decisions and actions on matters, such as conducting inspections and issuing permits, and the scheduling of the same. Defendant and Taylor knew and intended that Taylor's advice would form the basis for official acts by other public officials that would benefit Defendant, and further knew and intended that Taylor would use his supervisory authority over other City employees to exert pressure on them to perform official acts that would benefit Defendant.

      c.      From time to time, Defendant offered to pay, and did pay, Taylor money in exchange for Taylor to use his official position to provide, and agree to provide, assistance in ensuring that work performed by Defendant's business would be quickly inspected after completion.

3

     d.    From time to time, Defendant offered to pay, and did pay, Taylor money in exchange for Taylor to use his official position to more quickly finalize and provide Defendant with the necessary signed permits for work performed by Defendant and his business.

     e.    From time to time, Defendant and Taylor spoke on the phone and in person to discuss Defendant's requests for official action favorable to Defendant and Defendant's business. During some of these meetings, Defendant paid Taylor in cash.

     f.    Defendant used, and caused and directed others to use, interstate wire communications and mail delivered by the United States Postal Service.

### Acts in Furtherance of the Scheme

11.    The acts caused by Defendant in furtherance of the scheme included, but were not limited to, the following:

12.    Beginning in or around September 2016, and continuing through in or around September 2017, Defendant paid, and offered to pay, Taylor sums of cash.

13.    In or around September 2016, Defendant agreed to perform demolition work at an address on East 71st Street in Cleveland, Ohio, for a private client.

14.    In or around September 2016, Taylor, acting in his official capacity, conducted the clean-hole bulkhead inspection at the address on East 71st Street and advised Defendant that he passed the clean-hole bulkhead inspection.

15.    On or about October 3, 2016, Defendant met with Taylor and paid Taylor $100 cash in exchange for Taylor's favorable treatment in connection with the clean-hole bulkhead inspection at the address on East 71st Street.

16. On or about October 5, 2016, Taylor, acting in his official capacity, conducted the final compliance inspection at the address on East 71st Street and advised Defendant that he passed the final compliance inspection.

17. On or about October 6, 2016, Defendant met with Taylor and paid Taylor $100 cash in exchange for Taylor's favorable treatment in connection with the final compliance inspection at the address on East 71st Street.

18. In or around October 2016, Defendant agreed to perform demolition work at an address on East 147th Street in Cleveland, Ohio, for a private client.

19. On or about October 28, 2016, Taylor, acting in his official capacity, conducted the clean-hole bulkhead inspection at the address on East 147th Street and advised Defendant that he passed the clean-hole bulkhead inspection.

20. On or about October 28, 2016, Defendant met with Taylor and paid Taylor $100 cash in exchange for Taylor's favorable treatment in connection with the clean-hole bulkhead inspection at the address on East 147th Street.

21. In or around November 2016, Defendant agreed to perform demolition work at an address on Otokar Street in Cleveland, Ohio, for a private client.

22. On or about November 26, 2016, Taylor, acting in his official capacity, conducted the clean-hole bulkhead inspection at the address on Otokar Street and advised Defendant that he passed the clean-hole bulkhead inspection.

23. On or about November 26, 2016, Defendant met with Taylor and paid Taylor $100 cash in exchange for Taylor's favorable treatment in connection with the clean-hole bulkhead inspection at the address on Otokar Street.

24. In or around November 2016, Defendant submitted bids to CCLRC for demolition work at 9924 Raymond Avenue, Cleveland, Ohio.

25. In or around November 2016, CCLRC awarded Broadway Wrecking the demolition work at 9924 Raymond Avenue, Cleveland, Ohio.

26. On or about December 3, 2016, Taylor, acting in his official capacity, provided Defendant with a timely grade inspection at 9924 Raymond Avenue and advised Defendant that he passed the grade inspection.

27. On or about December 3, 2016, Defendant paid Taylor $50 cash in exchange for Taylor's favorable treatment in connection with the grade inspection at 9924 Raymond Avenue.

28. In or around May 2017, Defendant agreed to perform demolition work at an address on Harvard Avenue in Cleveland, Ohio, for a private client.

29. On or about July 20, 2017, Taylor, acting in his official capacity, provided Defendant with a timely clean-hole bulkhead inspection at the address on Harvard Avenue and advised Defendant that he passed the clean-hole bulkhead inspection.

30. On or about July 26, 2017, Defendant paid Taylor $50 cash in exchange for Taylor's favorable treatment in connection with the clean-hole bulkhead inspection at the address on Harvard Avenue.

31. In or around July 2017, Defendant submitted bids to CCLRC for demolition work at 3873 East 53rd Street, Cleveland, Ohio.

32. In or around July 2017, CCLRC awarded Broadway Wrecking the demolition work at 3873 East 53rd Street, Cleveland, Ohio.

33. On or about August 3, 2017, Taylor, acting in his official capacity, provided Defendant with a timely final compliance inspection at 3873 East 53rd Street and advised Defendant that he passed the inspection.

34. On or about August 5, 2017, Defendant paid Taylor $100 cash in exchange for Taylor's favorable treatment in connection with the final compliance inspection at 3873 East 53rd Street.

35. On or about September 8, 2017, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $7,305.30, which was partial payment for Broadway Wrecking's demolition work at 9924 Raymond Avenue.

36. On or about September 15, 2017, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $811.70, which was partial payment for Broadway Wrecking's demolition work at 9924 Raymond Avenue.

37. On or about September 22, 2017, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $790.00, which included partial payment for Broadway Wrecking's demolition work at 3873 East 53rd Street.

## Execution of the Scheme

38. On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, Defendant, for the purposes of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, used and caused to be used the United States mail to deliver the following items, each mailing constituting a separate count:

| Count | Approximate Date | Mailing |
|---|---|---|
| 1 | September 8, 2017 | Check issued by CCLRC to Broadway Wrecking, in the amount of $7,305.30 |
| 2 | September 15, 2017 | Check issued by CCLRC to Broadway Wrecking, in the amount of $811.70 |
| 3 | September 22, 2017 | Check issued by CCLRC to Broadway Wrecking, in the amount of $790.00 |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

JUSTIN E. HERDMAN
United States Attorney

By: ROBERT E. BULFORD
Chief, Criminal Division